## TRUCKOR v ERIE TOWNSHIP

Docket No. 279475. Submitted November 5, 2008, at Detroit. Decided
March 31, 2009, at 9:15 a.m.

Jeffrey A. Truckor and Alcatraz Industries, Inc., brought an action in
the Monroe Circuit Court against Erie Township and several town-
ship officials, challenging a township zoning ordinance that regulated
the operation of adult entertainment businesses. Alcatraz operated
an adult entertainment business on land owned by Truckor and
planned to move it to another parcel of land that Truckor owned, but
was unable to do so because the business would not be 1,200 feet from
any residential use, as required by the ordinance. The court, Michael
W. LaBeau, J., granted the defendants' motion for summary disposi-
tion, ruling that the ordinance did not violate the plaintiffs' right to
free speech because it did not unreasonably limit alternative channels
of communication. The plaintiffs appealed.

The Court of Appeals *held*:

1. The ordinance does not violate the plaintiffs' First Amend-
ment rights. A community cannot effectively preclude by zoning the
operation of legal businesses. Content-neutral time, place, and man-
ner regulations, however, are acceptable as long as they are designed
to serve a substantial governmental interest and do not unreasonably
limit alternative avenues of communication. In this case, the plain-
tiffs are already exercising their First Amendment rights by operat-
ing an existing adult entertainment business that is grandfathered
under the ordinance. It is proper to include grandfathered sites when
analyzing reasonable alternative avenues of communication. A gov-
ernment does not violate the First Amendment when it allows the
protected speech to occur, even if not in the desired locale.

2. The ordinance does not allow unbridled discretion in the
handling of an application for a special use permit to operate an
adult entertainment business. The ordinance sets out a detailed
procedure that the township's planning commission and the
township board must follow when they receive and rule on a
special use application, as well as nine standards the applicant
must meet to avoid denial. The ordinance also provides specific
time frames for the application process, including time frames

applicable when a public hearing is required. Thus, the ordinance does not constitute an unlawful prior restraint on speech.

3. The trial court did not err by dismissing the plaintiffs' additional claims, such as interference with business relationships and conspiracy. All the claims in the plaintiffs' complaint derived from the alleged unconstitutionality of the ordinance.

Affirmed.

GLEICHER, P.J., dissenting, would hold that the ordinance violates the First Amendment because it fails to provide adult entertainment businesses with adequate alternative avenues of expression. As the majority acknowledges, under the ordinance's footage restrictions, there is no place for a new adult entertainment business to locate within the zoning district that the ordinance requires. Thus, the ordinance effectively denies any adult entertainment business the opportunity to locate within the township and prevents the plaintiffs from relocating their business. An ordinance that permits only one grandfathered business and prohibits its relocation does not leave open ample alternative avenues of communication. The First Amendment does not mandate that a community host or leave available any specific minimum number of sites for adult entertainment venues, but it does require that interested parties have a reasonable opportunity to disseminate this form of constitutionally protected expression.

CONSTITUTIONAL LAW — FIRST AMENDMENT — FREE SPEECH — ADULT ENTERTAINMENT — ZONING — ALTERNATIVE AVENUES OF COMMUNICATING PROTECTED SPEECH — GRANDFATHERING UNDER ZONING ORDINANCES.

Content-neutral time, place, and manner zoning regulations of protected speech such as nonobscene erotic entertainment are acceptable under the First Amendment as long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication; in determining the availability of reasonable alternative avenues of communication, a court may consider the existence of currently operating adult entertainment businesses grandfathered under the ordinance.

*Patrick R. Millican* for Jeffrey A. Truckor and Alcatraz Industries, Inc.

*Lucas Law PC* (by *Frederick Lucas*) for Erie Township and others.

*Lennard, Graham & Goldsmith, P.L.C.* (by *Phillip D. Goldsmith*), for W. Thomas Graham.

Before: GLEICHER, P.J., and K. F. KELLY and MURRAY, JJ.

MURRAY, J. Erie Township, located in the southwest corner of Monroe County, adopted an ordinance that allows for the operation of adult entertainment establishments, but only in the C-2 zoning district, and then only if certain footage requirements are met. Plaintiffs, the owner of land (Jeffrey A. Truckor) and the entity operating an adult entertainment establishment on that land (Alcatraz Industries, Inc.), appeal by right the trial court's order granting defendants'[1] motion for summary disposition, denying plaintiffs' motion for summary disposition and motion for declaratory judgment, and dismissing the case. The discrete constitutional questions presented are whether the township's regulations "unreasonably limit alternative avenues of communication," *City of Renton v Playtime Theatres, Inc*, 475 US 41, 47; 106 S Ct 925; 89 L Ed 2d 29 (1986), or constitute a prior restraint on plaintiffs' speech. We hold that (1) the township has not suppressed plaintiffs' "speech," (2) the ordinance otherwise does not unreasonably limit alternative means of communication, and (3) the ordinance does not constitute an unlawful prior restraint. We therefore affirm the trial court's order.

I. FACTS AND PROCEEDINGS

Plaintiff Truckor owns a parcel of land on Telegraph Road in Erie Township, on which he operated an adult entertainment business featuring topless dancing from 1992 to 2000. In 2000, Truckor transferred to plaintiff

---

[1] The individual defendants are involved in the Erie Township government, holding positions such as township trustee, township planning commission member, township supervisor, township clerk, township treasurer, and township attorney.

Alcatraz his permits to operate the adult entertainment business. From 2000 through the present, Alcatraz has been operating the adult entertainment business on the Telegraph Road property, which Truckor still owns. In 2003, the township enacted an adult entertainment ordinance, which provides that any adult entertainment establishment must obtain a special use permit, be located on property zoned C-2, and be at least 1,200 feet away from, *inter alia*, any residential district or residential use.

In particular, § 11.02 allows for the operation of adult entertainment businesses, with subsection A containing the footage requirements and subsection B containing "special performance standards" for signage, lighting, hours of operation, and other particulars. Additionally, under § 5.06 an applicant for a special land use permit—which adult businesses must obtain—must also satisfy the following nine criteria in order to obtain the permit:

1. The project will be harmonious with and in accordance with the Land Use Plan of the Township.

2. The project will be harmonious with and in accordance with the general intent and purposes of this Ordinance.

3. The project will be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such a use will not change the essential character of the area in which it is proposed. In determining whether this requirement has been met, consideration shall be given to:

a. The bulk, placement, and materials of construction of proposed structures.

b. Pedestrian and vehicular circulation.

c. The location of vehicular use or parking areas.

4. The project will not be hazardous to any person or property, or detrimental or disturbing to the public welfare or to existing or reasonably anticipated future uses in the same general vicinity.

5. The project will be served adequately by essential public facilities and services, such as highways, streets, police, fire protection, drainage structures, refuse disposal, water and sewage facilities and schools, and minimize the impact of traffic generated by the proposed development on adjacent properties.

6. The project will not involve uses, activities, processes, materials and equipment or conditions of operation that will be detrimental to any person, property or general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors.

7. The project will not create excessive additional requirements at public cost for public facilities and services.

8. The project shall be in compliance with the site plan approval standards of Section 4.05.

9. The project shall be in compliance with all applicable site development requirements of Article 11 (Standards for Specific Special Land Uses).

Although there are no specific timetables within Article 11 for a decision by the township, under Article 3 of the ordinance, which is the article addressing general administration and enforcement of the ordinance, "all approvals applied for under the Ordinance shall be acted upon in a timely manner." Specifically, a designated approving body must decide any application no more than 90 days from when the application is deemed complete. Art 3, § 3.08(A)(2). If a public hearing is necessary, it must be held within 60 days of a completed application, and 90 days after the hearing. Art 3, § 3.08(A)(3). Article 11 of the ordinance states that decisions "shall" be made and the planning commission must state its reasons in writing for recom-

mending approval or denial of an application, with reference to the standards within § 5.06. An appeal from the township board is to the circuit court, but there is no provision within the ordinance to allow an establishment to operate while the administrative and judicial process is underway.

In 2005, Truckor purchased a parcel of property zoned C-2 on Victory Road in the township, the property to which Alcatraz planned to move the Telegraph Road adult entertainment business.[2] The township, however, would not allow plaintiffs to construct an adult entertainment business on the Victory Road property because the property was not at least 1,200 feet from a residential area. Indeed, the township has conceded that because of the footage requirements, there is no current possibility for a new establishment to locate within the C-2 district.

According to plaintiffs, after being informed of this restriction, defendant Paul Mikels, the township supervisor, informed Truckor that he should not apply for a variance on the Victory Road property because it would be denied for lack of hardship. Mikels suggested that Truckor seek an amendment to the zoning ordinance. Thus, on August 29, 2005, Truckor filed a petition to amend the zoning ordinance to change the 1,200-foot restriction to 750 feet, which he believed would enable him to construct the adult entertainment business, provided that he obtain a special use permit as required by the ordinance. The Erie Township Planning Commission held a public hearing on the petition on October 6, 2005.

---

[2] The record is not entirely clear as to whether plaintiffs want to move the current establishment or desire to operate a second adult entertainment business on Victory Road. At oral argument before this Court, however, plaintiffs' counsel represented to the Court that plaintiffs wanted to relocate the current business to the Victory Road location.

On November 28, 2005, before the township reached a decision on Truckor's petition, plaintiffs filed a nine-count complaint against defendants. The crux of plaintiffs' complaint was that the ordinance violated their right to free speech by removing all channels of communication for adult entertainment businesses and by acting as a prior restraint on free speech. The complaint also contained several tort claims that were based on the invalidity of the ordinance and defendants' acts under the ordinance.

After defendants first moved for summary disposition, the trial court entered an order staying the proceedings for 90 days to allow the township to complete the decision-making process on Truckor's petition to amend the ordinance and to allow Truckor to apply for a variance. Thereafter, the Erie Township Board of Trustees denied Truckor's petition for an amendment, and the Erie Township Zoning Board of Appeals denied his application for a variance.

The trial court subsequently granted defendants' motion for summary disposition, holding that the ordinance did not violate plaintiffs' right to freedom of speech as guaranteed by the First Amendment to the United States Constitution. Relevant to the issues on appeal, the trial court ruled that the ordinance did not unreasonably limit alternative avenues of communication:

So the—the—the only significant issue here is whether the township has provided a reasonable alternative avenue for an adult entertainment business.

The Court finds that the township is—has adequately demonstrated that there is an alternative for this expression since the plaintiffs are currently engaged in running an adult entertainment business in Erie Township, because there is in fact other land in the township in which this sort of business could at least potentially be limited—or be—be built. However, I'm—that secondary portion is not necessary for this

Court ruling. Therefore, I find that they are not entitled—plaintiffs are not entitled to—to declaratory judgment or summary disposition as to a matter of law as to Counts I through IV, but that the defendants are.

Plaintiffs' complaint was subsequently dismissed, and this appeal followed.

## II. ANALYSIS

Plaintiffs first argue that the trial court erred in ruling that the adult entertainment ordinance was constitutional, asserting that the ordinance instead violates their right to freedom of speech as guaranteed by the First Amendment to the United States Constitution. Specifically, plaintiffs argue that the ordinance does not leave open alternative avenues of communication and is a prior restraint on their speech.

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007). When deciding a motion for summary disposition pursuant to MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A motion brought pursuant to MCR 2.116(C)(10) should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Miller v Purcell*, 246 Mich App 244, 246; 631 NW2d 760 (2001).

### A. SUPPRESSION OF SPEECH

All ordinances are presumed to be constitutional and are construed to be so unless their unconstitutionality

is clearly apparent. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 341-342; 675 NW2d 271 (2003). The foundation for this presumption is our recognition that elected officials generally act in a constitutional manner when regulating within their particular sphere of government. *Maynard v Bd of Canvassers of the Kent Co First Representative Dist*, 84 Mich 228, 256; 47 NW 756 (1890) (CAHILL, J., dissenting). The party challenging the ordinance has the burden of rebutting the presumption that the ordinance is constitutional. *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 539; 669 NW2d 594 (2003).

Our duty in this case is not to determine whether the activity that occurs inside Alcatraz's place of business is entitled to First Amendment[3] protection, as that issue —whether correct or not—has been decided long ago. See *Jott, Inc v Clinton Charter Twp*, 224 Mich App 513,

---

[3] The First Amendment to the United States Constitution provides as follows:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The "free speech" clause of the Michigan Constitution of 1963 is contained in art 1, § 5, and provides:

Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press.

The Michigan and United States constitutions' free speech clauses "are coterminous." *In re Contempt of Dudzinski*, 257 Mich App 96, 100; 667 NW2d 68 (2003). Thus, both the United States Supreme Court and our Court have recognized that nude dancing is not inherently expressive conduct and falls only "within the outer ambit of the First Amendment's protection." *City of Erie v Pap's A M*, 529 US 277, 289; 120 S Ct 1382; 146 L Ed 2d 265 (2000) (opinion by O'Connor, J.). Accord *Jott, Inc v Clinton Charter Twp*, 224 Mich App 513, 526; 569 NW2d 841 (1997).

526; 569 NW2d 841 (1997), citing *Barnes v Glen Theatre, Inc*, 501 US 560, 565-566; 111 S Ct 2456; 115 L Ed 2d 504 (1991), where it was noted that "[n]onobscene, erotic entertainment, such as topless dancing, is a form of protected expression under the First Amendment, but enjoys less protection than other forms of First Amendment expression, such as political speech." Additionally, "[t]he use of zoning and licensing ordinances to regulate exhibitions of 'adult entertainment' is widely recognized." *Jott, supra* at 526.

An ordinance that does not suppress protected forms of sexual expression, but which is designed to combat the undesirable secondary effects of businesses that purvey such activity, is to be reviewed under the standards applicable to content-neutral time, place, and manner regulations. *Renton, supra* at 49. " '[C]ontent-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id.* at 47. See, also, *Los Angeles v Alameda Books, Inc*, 535 US 425, 433-434; 122 S Ct 1728; 152 L Ed 2d 670 (2002) (opinion by O'Connor, J.).

The parties agree that the challenged ordinance is a content-neutral time, place, and manner regulation. Further, plaintiffs do not contest that the ordinance serves a substantial governmental interest and for good reason. See *Young v American Mini Theatres, Inc*, 427 US 50, 71; 96 S Ct 2440; 49 L Ed 2d 310 (1976) (a municipality's "interest in attempting to preserve the quality of urban life is one that must be accorded high respect").

In light of these admissions, and as noted at the outset of this opinion, the issue in dispute is whether the ordinance unreasonably limits alternative avenues

of communication. This is a question of law. *Fly Fish,
Inc v Cocoa Beach*, 337 F3d 1301, 1309 (CA 11, 2003).
Toward that end, there is no minimum number of
locations, or a minimum percentage of land, that an
ordinance must make available for adult entertainment
usage. *Jott, supra* at 533. Each city is obviously unique,
often differing significantly from other cities in terms of
its character, geography, population, and other circum-
stances. *Id.* Because each city presents its own unique
set of circumstances, "each case must be decided ac-
cording to its specific facts." *Id.*, citing *Christy v Ann
Arbor*, 824 F2d 489, 491 (CA 6, 1987), modification
recognized by *DLS, Inc v Chattanooga*, 107 F3d 403 (CA
6, 1997) (quotation marks omitted). In considering this
issue, courts look to the number of lots or buildings
available in the district for these establishments, the
physical size of the municipality and acreage available
for these businesses, the ratio of these establishments
per population in the municipality, and the market
demand for opening such enterprises. See, e.g., *Renton,
supra* at 53-54; *Young, supra* at 71; *Jott, supra* at
529-530; *Executive Arts Studio, Inc v Grand Rapids*,
391 F3d 783, 797-798 (CA 6, 2004).[4]

We know from our precedents that a community
cannot effectively zone out legal businesses. For ex-
ample, in *City of Ferndale v Ealand (On Remand)*, 92
Mich App 88, 90; 286 NW2d 688 (1979), the city of
Ferndale enacted an ordinance allowing for the opera-
tion of adult businesses in a C-2 district so long as it was
not within 1,000 feet of any residential type dwelling,
but allowing for a waiver of the footage requirement
under certain circumstances. At the trial held on the
plaintiff's equal protection claim, a city building inspec-

---

[4] For a thorough discussion of the federal caselaw in this area, see *Pack
Shack, Inc v Howard Co*, 377 Md 55, 80-84; 832 A2d 170 (2003).

tor testified that no location within the C-2 district met the ordinance requirements. *Id.* at 90-91. Relying on *Young, supra,* and *Nortown Theatre Inc v Gribbs,* 373 F Supp 363, 369-370 (ED Mich, 1974), this Court held the ordinance to be a violation of the equal protection clause because " 'the effect of the restriction is an almost total ban on uses conceded by the Defendants to be lawful.' " *Ealand, supra* at 93, quoting *Nortown, supra* at 369-370. This Court also rejected the city's argument that the waiver would provide sufficient flexibility to uphold its constitutionality. *Ealand, supra* at 94.

The present case would be on all fours with *Ealand* except for two points. First, plaintiffs have not alleged an equal protection claim. Second, and more importantly, plaintiffs are already exercising their First Amendment rights through operation of the existing business. It is the impact of this last point that in large part determines the outcome of this case.

We can initially set aside any dispute about whether we can consider the grandfathered business that Alcatraz currently operates. Though we are unaware of any Michigan authority addressing whether to include grandfathered sites in the "reasonable alternative avenues of communication" analysis, we are persuaded that the most sensible approach is to do so because the grandfathered site is still an operating business within the township. See *Boss Capital, Inc v City of Casselberry,* 187 F3d 1251, 1254 (CA 11, 1999), abrogated on other grounds by *City of Littleton v Z J Gifts D-4, LLC,* 541 US 774 (2004) (holding that it was proper to count grandfathered sites when determining whether location restrictions in an ordinance left open reasonable alternative avenues of expression for adult businesses).

And that is where plaintiffs' case under the First Amendment fails. Remember that, according to *Renton,*

all the government must do in this type of case is
"refrain from effectively denying [plaintiffs] a reason-
able opportunity to open and operate an adult theatre
within the [township]." *Renton, supra* at 54. This is
because, at its core, the First Amendment prevents the
government from suppressing speech, see *Turner
Broadcasting Sys, Inc v FCC*, 512 US 622, 641-642; 114
S Ct 2445; 129 L Ed 2d 497 (1994); *Texas v Johnson*,
491 US 397, 403; 109 S Ct 2533; 105 L Ed 2d 342 (1989),
and once it is shown that the plaintiffs' rights to engage
in the protected speech are not infringed, there can be
no First Amendment violation. The First Amendment
is not violated when the government allows the pro-
tected speech to occur, even if not in the desired locale.
*Renton, supra* at 52.

Consequently, courts have repeatedly rejected First
Amendment claims in cases like the instant one, where
the new zoning ordinance does not reduce the number
of adult businesses that operated previous to enactment
of the ordinance. See, e.g., *Fly Fish, Inc, supra* at 1310,
where the court held that "[b]y guaranteeing that the
number of sites available under a new zoning ordinance
is not less than the existing sites, the ordinance does not
suppress speech, but merely relocates it, as allowed by
*Renton*." See, also, *Lakeland Lounge of Jackson, Inc v
City of Jackson*, 973 F2d 1255, 1260 (CA 5, 1992). In a
similar vein, one federal district court has recognized
that an ordinance does not suppress speech when the
plaintiff establishment is currently operating under
those regulations. *Sands North, Inc v Anchorage*, 537 F
Supp 2d 1032, 1040 (D Alas, 2007).

In light of these decisions and the undisputed fact
that plaintiffs have not been prevented from operating
their adult business in the township and are grandfa-
thered in under the new ordinance, we hold that

plaintiffs cannot maintain a cause of action under the First Amendment. It is simply impossible to show that the government (the township) has unlawfully suppressed plaintiffs' speech while the business still operates within the township borders. *Id.* Absent evidence of even a threat to prevent this business operation, plaintiffs' claim can only be premised on the location of the operations, and caselaw is clear that the township can reasonably regulate the location of such enterprises.[5]

Even if we had to go further and decide whether the one adult entertainment business already in the township provides a reasonable alternative avenue for protected expression, we would hold that it does. Based on the record presented to the trial court, we know that (1) the township is largely rural and sparsely populated,[6] (2) plaintiffs already operate the one adult entertainment establishment in the township (and in fact, the entire county), (3) based on the township population, there is a 4,850:1 ratio of people to adult entertainment establishments in the township, and (4) there is no other establishment seeking to operate within the township.

Caselaw developed after *Renton* has concluded that a municipality cannot totally ban adult uses or fail to provide reasonable sites for relocation that are at least sufficient to enable the current adult businesses to

---

[5] We disagree with our esteemed dissenting colleague for three reasons. First, as we read plaintiffs' complaint and brief on appeal, the only facial challenge is relative to the prior restraint issue. Second, that Erie Township is similar in size to Clinton Township tells us nothing about the characteristics of these two townships that are located many miles apart and located in different geographical regions of the state (southeast border of state and northeast of Detroit). Third, and in relation to our second point, we believe it is critical that the record shows that not one other adult business has sought to operate in the township and plaintiffs continue to operate their establishment under the ordinance.

[6] Erie Township is a largely rural community with a population of just under 5,000 people.

remain in business. See *DI MA Corp v City of St Cloud*, 562 NW2d 312, 321-322 (Minn App, 1997). In order to determine whether there is a sufficient number of available sites, courts look to the number of sites compared with the number of adult businesses currently in existence, or that are seeking to open such a business. *Diamond v City of Taft*, 215 F3d 1052, 1057 (CA 9, 2000).

Here, the evidence shows that Alcatraz is the only adult business establishment that has ever operated in Erie Township, or that is even seeking to operate in Erie Township. The evidence also shows an acceptable business-population ratio of one business for every 4,850 people. See *Executive Arts Studio, Inc v Grand Rapids*, 227 F Supp 2d 731, 754 (WD Mich, 2002), aff'd 391 F3d 783 (CA 6, 2004); *Univ Books & Videos, Inc v Miami-Dade Co*, 132 F Supp 2d 1008, 1015 (SD Fla, 2001). There is simply no dispute that under the ordinance and the township's decision to grandfather in plaintiffs' current operations, plaintiffs are fully engaged in their protected speech.

Additionally, it is undisputed that the ordinance does not facially zone out all adult businesses, for it allows the preexisting establishment to operate outside the C-2 district. And as noted, the township has a substantial interest in curtailing the secondary effects of the adult orientated business. For these reasons, we hold that the ordinance does not violate these plaintiffs' rights to freedom of expression as guaranteed by the First Amendment. See *Casanova Entertainment Group, Inc v City of New Rochelle*, 375 F Supp 2d 321, 341-342 (SD NY, 2005).[7]

---

[7] Whether the ordinance effectively precludes another establishment opening up within the C-2 district is not necessary to decide, as the facts established in this case reveal that the township has not suppressed plaintiffs' speech.

### B. PRIOR RESTRAINT

Plaintiffs also maintain a facial attack through which they argue that the ordinance constitutes an unconstitutional prior restraint on speech because it lacks procedural safeguards. The term "prior restraint" is used to describe an administrative or judicial order that forbids certain communications in advance of the time that the communications are to occur, *Van Buren Twp v Garter Belt, Inc*, 258 Mich App 594, 623; 673 NW2d 111 (2003), and is likewise based upon the First Amendment to the United States Constitution. Plaintiffs argue that under *Freedman v Maryland*, 380 US 51; 85 S Ct 734; 13 L Ed 2d 649 (1965), and *FW/PBS, Inc v City of Dallas*, 493 US 215; 110 S Ct 596; 107 L Ed 2d 603 (1990), overruled in part by *Littleton, supra* at 781, the special use permit ordinance constitutes an unlawful prior restraint on speech because it gives both unbridled discretion to the decision maker and places no limitations on when any administrative decision must be made.[8]

It is certainly true that *FW/PBS*, in applying two of the three parts of the *Freedman* test, held that licensing decisions regarding adult establishments must have strict time limits for municipal decisions to avoid any First Amendment free speech infirmities. *FW/PBS, supra* at 226-227. However, since *Thomas v Chicago Park Dist*, 534 US 316, 322-323; 122 S Ct 775; 151 L Ed 2d 783 (2002), numerous courts have held that *content-*

---

[8] For their part, defendants only argued below that plaintiffs' prior restraint argument should not be considered by the court if it finds that the space regulations do not violate the First Amendment. But, as this opinion makes clear, the "time, place and manner" argument is separate from a prior restraint argument based on the unbridled discretion given to a local decision maker. See *Thomas v Chicago Park Dist*, 534 US 316, 323-324; 122 S Ct 775; 151 L Ed 2d 783 (2002).

*neutral* ordinances are not subject to *Freedman*'s administrative time limit requirements. For example, in *Solantic, LLC v City of Neptune Beach*, 410 F3d 1250, 1270 (CA 11, 2005), the court held that "[w]hether a licensing ordinance—which constitutes a prior restraint on speech—must contain a time limit within which to make licensing decisions depends on whether the ordinance is content based or content neutral." See, also, *Covenant Media of South Carolina, LLC v North Charleston*, 493 F3d 421, 431-432 (CA 4, 2007).[9]

Assuming the validity of these cases, the issue is whether the ordinance is content based or content neutral. If it is a content-based ordinance, then the time limit requirements under *Freedman* and *FW/PBS* apply; if the ordinance is not content based, i.e. it is content neutral, then the time limit requirements do not apply. *Id.* In this case, because plaintiffs have admitted that the ordinance is content neutral, the holdings of *Freedman* and *FW/PBS* are not applicable. Therefore, plaintiffs' prior restraint argument under the First Amendment free speech clause is without merit under this line of cases.

In any event, even applying *Freedman* reveals that the special permit provision is not an unconstitutional prior restraint that bestows unbridled discretion on decision makers. The provision sets out a detailed procedure that the Planning Commission and Township Board must follow when they receive and rule on a special use application. The provision also sets out nine standards that must be met, or else the permit "shall be

---

[9] Plaintiffs' reliance on a passage from *11126 Baltimore Blvd, Inc v Prince George's Co*, 58 F3d 988, 995 (CA 4, 1995), is misplaced, as the United States Court of Appeals for the Fourth Circuit has subsequently stated that that particular passage is no longer good law after *Thomas*. *Covenant Media, supra* at 432 n 7.

denied." Additionally, for each step of the decision-
making process, the Planning Commission and/or
Township Board are directed to review the application
for a specific purpose, then the application passes to the
next stage of the process (e.g., "the Planning Commis-
sion shall review the application . . . for completeness,"
then "the Planning Commission shall publish a notice
of public hearing," then "the Planning Commission
shall recommend approval, denial, or approval with
conditions," then "[u]pon review of the special land use
application, all supporting materials, public hearing
comments, and the recommendations of the Planning
Commission, the Township Board shall deny, approve,
or approve with conditions" the application). Addition-
ally, the ordinance contains specific time frames for
deciding completed applications, including separate
time frames if a public hearing is required. Therefore,
the process does not allow unbridled discretion in the
handling of an application, and the ordinance does not
constitute an unlawful prior restraint on speech.[10]

### C. TORT CLAIMS

Finally, plaintiffs argue that the trial court erred in
dismissing their claims of interference with business
relationships, conspiracy, intentional infliction of emo-
tional distress, and for punitive damages. We disagree.

---

[10] The trial court did not rely on inadmissible evidence in granting
defendants' motion for summary disposition. First, plaintiffs present no
evidence that the challenged facts are false or that the challenged
exhibits are inauthentic. Second, and more importantly, even if the
evidence were inadmissible, this would not have changed the trial court's
ultimate decision on the constitutionality of the ordinance. The trial
court expressly stated that its decision was not based on the challenged
evidence. Likewise, our conclusion concerning the constitutionality of the
ordinance is not based on the challenged evidence, and a consideration of
that evidence is unnecessary to resolve the issues on appeal.

All of the claims in plaintiffs' complaint derive from the alleged unconstitutionality of the ordinance. Indeed, plaintiffs acknowledge that they are entitled to reversal only "[i]f the Ordinance is found to be unconstitutional . . . ." However, we have held that the ordinance is constitutional. Consequently, plaintiffs can sustain none of their claims, and no amount of discovery would change this fact. Accordingly, because the ordinance is constitutional, we affirm the trial court's dismissal of plaintiffs' complaint.

Affirmed.

K. F. KELLY, J., concurred.

GLEICHER, P.J. (*dissenting*). I respectfully dissent. Because the challenged zoning ordinance fails to provide adult businesses with adequate alternative avenues of expression, it violates the First Amendment.

Zoning ordinances aimed at ameliorating "the undesirable secondary effects" of adult entertainment businesses, rather than regulating the content of their expression, do not offend the First Amendment. *City of Renton v Playtime Theatres, Inc*, 475 US 41, 49; 106 S Ct 925; 89 L Ed 2d 29 (1986). In *Renton*, the United States Supreme Court explained that content-neutral zoning regulations pass constitutional muster "so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Id*. at 47. But zoning authorities may not use " 'the power to zone as a pretext for suppressing expression' " and must "refrain from effectively denying" adult businesses "a reasonable opportunity" to operate. *Id*. at 54 (citation omitted).

Plaintiff Alcatraz Industries, Inc., a corporation owned by plaintiff Jeffrey A. Truckor, operates an adult

entertainment business on Telegraph Road in defendant Erie Township. After plaintiffs opened their Telegraph Road business, the township enacted a zoning ordinance addressing the secondary effects of adult entertainment establishments. Erie Township's ordinance limited future adult entertainment locations to property zoned C-2 and imposed a 1,200-foot separation requirement between adult businesses and residential areas. In 2005, Truckor purchased land on Victory Road, within Erie Township's C-2 zoning district, because he sought to move the adult business to this new location. As the majority acknowledges, Erie Township officials advised Truckor that because of the ordinance's footage requirements, "there is no current possibility for a new establishment to locate within the C-2 district." *Ante* at 159. Thus, the township's zoning ordinance effectively denies any adult business the opportunity to locate within Erie Township and prevents plaintiffs from relocating their current adult establishment. Nevertheless, the majority deems the challenged ordinance constitutionally valid, concluding that "[i]t is simply impossible to show that the government (the township) has unlawfully suppressed plaintiffs' speech while the business still operates within the township borders." *Ante* at 167.

However, in my view, the central issue presented is not whether plaintiffs' ability to operate an adult establishment on Telegraph Road fulfills their First Amendment rights. Rather, the appropriate inquiry is whether Erie Township's zoning ordinance satisfies constitutional requirements. Plaintiffs have mounted a facial challenge to the constitutionality of the ordinance. "A facial challenge is one that attacks the very existence or enactment of the ordinance; it alleges that the mere existence and threatened enforcement of the ordinance adversely affects all property regulated in the market as

opposed to a particular parcel." *Jott, Inc v Clinton Charter Twp*, 224 Mich App 513, 525; 569 NW2d 841 (1997). The overbreadth doctrine "allows a party to challenge a law written so broadly that it may inhibit the constitutionally protected speech of third parties, even though the party's own conduct may be unprotected." *In re Chmura*, 461 Mich 517, 530; 608 NW2d 31 (2000).

Indisputably, the township possesses a substantial interest in controlling the deleterious secondary effects of adult businesses. But under the intermediate-level scrutiny applied by the United States Supreme Court in *Renton*, an ordinance must "leave open *ample* alternative channels for communication of the information." *Clark v Community for Creative Non-Violence*, 468 US 288, 293; 104 S Ct 3065; 82 L Ed 2d 221 (1984) (emphasis added). Since *Renton*, the United States Supreme Court has reaffirmed this concept.

> [T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." [*Ward v Rock Against Racism*, 491 US 781, 791; 109 S Ct 2746; 105 L Ed 2d 661 (1989) (citation omitted).][1]

---

[1] In *Los Angeles v Alameda Books, Inc*, 535 US 425, 429-430; 122 S Ct 1728; 152 L Ed 2d 670 (2002) (opinion by O'Connor, J.), the United States Supreme Court reversed a ruling of the United States Court of Appeals for the Ninth Circuit that struck down a zoning ordinance that prohibited the location of more than one adult entertainment enterprise in a building. A four-justice plurality reviewed the ordinance by applying the *Renton* framework, which imposed intermediate scrutiny of zoning ordinances aimed at controlling "the secondary effects of protected speech." *Id.* at 433-434, 438, 440-443. In a concurring opinion, Justice Kennedy agreed with the result reached by the plurality, but described as

The township's zoning ordinance must refrain from "burden[ing] substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 799. In my view, an ordinance that permits only one grandfathered adult business and prohibits its relocation within the township does not leave open "ample alternative avenues of communication" in Erie Township.

Even assuming that plaintiffs sought to open a second establishment rather than merely move the first, I would hold that Erie Township's zoning scheme fails to allow "ample, accessible real estate" or a reasonable opportunity to operate an alternative channel of communication. *Renton, supra* at 53-54. Admittedly, Erie Township is a small, rural community. But its geographical size is similar to that of Clinton Township, which enacted the zoning ordinance approved in *Jott, supra* at 533-534, permitting 12 adult entertainment sites. My research reveals no caselaw supporting the notion that one adult establishment, barred from relocation, satisfies *Renton*'s requirement of "alternative avenues of communication." *Renton, supra* at 50. Although the First Amendment does not mandate that a community host or leave available any specific minimum number of sites for adult entertainment venues, it does require that interested parties have a "reasonable opportunity" to disseminate this form of constitutionally protected expression.

---

"something of a fiction" *Renton*'s "content neutral" characterization of a zoning ordinance intending to curb secondary effects arising from the operation of an adult entertainment business. *Id.* at 448 (opinion by Kennedy, J.). But Justice Kennedy later clarified that "[n]evertheless, . . . the central holding of *Renton* is sound: A zoning restriction that is designed to decrease secondary effects and not speech should be subject to intermediate rather than strict scrutiny." *Id.*

Because Erie Township's ordinance unreasonably limits to one the number of adult establishments that may operate in the township, and forecloses that single establishment from altering its location, I would hold that the ordinance violates *Renton* and would reverse.