# STATE OF MICHIGAN

# COURT OF APPEALS

---

JON JON'S, INC. and WARREN PROPERTY
INVESTMENTS, INC.,

        Plaintiffs-Appellants,

v

CITY OF WARREN,

        Defendant-Appellee.

UNPUBLISHED
October 26, 2017

No. 332504
Macomb Circuit Court
LC No. 2013-002100-CZ

---

Before: BORRELLO, P.J., and MURPHY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this case raising constitutional challenges to city ordinances regulating sexually oriented businesses, plaintiffs, Jon Jon's, Inc. and Warren Property Investments, Inc., appeal as of right the trial court's opinion and order granting summary disposition in favor of defendant, the City of Warren. We affirm.

The underlying facts of this matter are undisputed and have been set forth amply elsewhere.[1] Plaintiffs own a parcel of real estate in Warren upon which a strip club was operated for many years. In 1986, defendant enacted a zoning ordinance regulating the location of "sexually oriented businesses," which by definition included plaintiff's strip club; the strip club did not conform to the ordinance, but it continued to operate as a pre-existing nonconforming use. In 2005, defendant also enacted an ordinance referred to as "Article X" that revised the licensing process for sexually oriented businesses, forbade their operation without a license, and imposed various other restrictions on their operation and conduct. In 2009, a part owner of plaintiffs was granted a variance to augment the building. However, in 2010, defendant's Zoning Board of Appeals (ZBA) withdrew plaintiffs' nonconforming use status when it determined that, contrary to the variance, plaintiffs had essentially demolished the structure and built a new one. Later that year, defendant amended the portion of Article X that prohibited

---

[1] See, e.g., *Jon Jon's, Inc v City of Warren*, ___ Fed App'x ___ (CA 6, June 27, 2017); *Jon Jon's, Inc v City of Warren*, 534 Fed App'x 541 (CA 6, 2013); *Jon Jon's, Inc v City of Warren*, 162 F Supp 3d 592 (ED Mich, 2016). We direct those interested in a more exhaustive factual history to these cases.

alcoholic beverages at sexually oriented businesses to eliminate an exemption to that prohibition for state liquor-licensed establishments.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Because it appears that the trial court examined evidence beyond the pleadings, except with regard to the question of standing, we consider the motion as having been granted pursuant to MCR 2.116(C)(10). *DeHart v Joe Lunghamer Chevrolet, Inc*, 239 Mich App 181, 184; 607 NW2d 417 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 120. We also review de novo the constitutionality of an ordinance. *Houdek v Centerville Twp*, 276 Mich App 568, 573; 741 NW2d 587 (2007).

Plaintiffs dispute the trial court's finding that they lacked standing. We disagree in relevant part. First, plaintiffs' argument that the trial court erred in finding that they lacked standing to challenge the *zoning* ordinance is misplaced, because the trial court made no such finding and neither do we. Regarding plaintiffs' standing to challenge Article X, the *licensing* ordinance, plaintiffs claim it is overbroad, which the trial court correctly observed is an exception to traditional standing rules. See *Mich Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 170; 533 NW2d 339 (1995). Finally, we accept defendants' argument that because the zoning ordinance prohibits plaintiff from operating its strip club on the premises, and as we will discuss, we reject plaintiff's challenges to the zoning ordinance, the application of Article X to plaintiff's business is moot. "A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). Plaintiffs reasonably point out that Article X may interfere with any effort on their part to reopen their strip club elsewhere in the city, but in the absence of more than a mere hypothetical possibility that plaintiffs may make such an effort, this argument merely "rests upon contingent future events" and is therefore unripe. *City of Huntington Woods v Detroit*, 279 Mich App 603, 615-616; 761 NW2d 127 (2008). The trial court correctly held that plaintiffs lack standing to challenge Article X beyond their overbreadth argument.

"Two forms of overbreadth challenges have been recognized: where a law or ordinance sweeps too broadly, covering a substantial amount of protected free speech, and where every application of a law or ordinance creates an unreasonable risk of censorship." *Mich Up & Out of Poverty Now Coalition*, 210 Mich App at 170. Plaintiffs do claim that Warren Ordinances, § 6-308(3), which prohibits employees that regularly appear semi-nude from touching customers on the premises of a sexually oriented business, is overbroad. Plaintiffs explain that an employee might violate the ordinance if he or she regularly appears semi-nude, but while fully clothed, accidentally brushes against a customer. The ordinance does not, however, prohibit accidental touching, but rather prohibits "knowingly or intentionally" touching a customer. We appreciate the possibility of a scenario under which proving whether a particular touch was or was not accidental. However, such a proof problem may favor plaintiffs rather than harm them. In any event, because the ordinance expressly does not prohibit accidental contact, plaintiffs fail to

demonstrate that the no-touching provision of Article X is constitutionally overbroad. Plaintiffs additionally assert that the no-touching provision is not narrowly tailored and vague, but provide no coherent argument that we can discern, and we will invent none on their behalf. See *1031 Lapeer LLC v Rice*, 290 Mich App 225, 236; 810 NW2d 293 (2010).

Plaintiffs further contend that the terms "lewdness" and "public indecency" are impermissibly vague. "An ordinance is unconstitutionally vague if it (1) does not provide a fair notice of the type of conduct prohibited or (2) encourages subjective and discriminatory application by delegating to those empowered to enforce the ordinance the unfettered discretion to determine whether the ordinance has been violated." *Plymouth Twp v Hancock*, 236 Mich App 197, 200; 600 NW2d 380 (1999). We need not address that particular quagmire, however, because those terms only appear in what amounts to a preamble to the functional provisions of Article X in a list of "adverse secondary effects" defendant hopes Article X will combat. Warren Ordinances, § 6-276(b)(1). Thus, Article X does not actually prohibit "lewdness" or "public indecency" at all, but rather prohibits specific and defined conduct for a purpose, the arguable vagueness of which is largely irrelevant.

Plaintiffs challenge Article X's prohibition against nudity and restrictions against "semi-nudity" on First Amendment freedom of expression grounds. We need not deeply examine the former, because the United States Supreme Court has already determined that the governmental interest "in combating the negative secondary effects associated with adult entertainment establishments . . . is unrelated to the suppression of the erotic message conveyed by nude dancing." *Erie v Pap's A M*, 529 US 277, 296; 120 S Ct 1382; 146 L Ed 2d 265 (2000). In contrast to the prohibition against nudity, Article X unambiguously, albeit technically only by implication, *permits* semi-nudity, but imposes restrictions on how far semi-nude employees must remain from patrons or customers. Plaintiff does not articulate how such restrictions violate the First Amendment. Similar restrictions have been upheld by federal courts, and in the absence of any meaningful argument to the contrary, we are inclined to view those decisions as persuasive. See *Sensations, Inc v Grand Rapids*, 526 F3d 291, 299 (CA 6, 2008); *Lady J Lingerie, Inc v Jacksonville*, 176 F3d 1358, 1365 (CA 11, 1999); *Peek-A-Boo Lounge of Bradenton, Inc v Manatee Co, Fla*, 630 F3d 1346, 1350 (CA 11, 2011).

Plaintiffs contend that there is no evidence that their club or any other sexually oriented business has ever caused the negative secondary effects that the statutes at issue seek to prevent, and any such problems were wholly invented by defendant. Whether or not the former proposition is true, defendant appears to have based the perceived need for its ordinances on conclusions drawn from numerous reports and judicial decisions. See Warren Ordinances, § 6-276(b) Defendant is not required to conduct its own studies, nor is it required to do more than reasonably anticipate the possibility of adverse effects before enacting regulations. See *Erie*, 529 US at 296-297. The wisdom or surreptitious motivations of doing so is not a justiciable question. See *Straus v Governor*, 459 Mich 526, 531; 592 NW2d 53 (1999).

Plaintiffs contend that the ordinance revision that eliminated an exception to the prohibition against alcohol inside sexually oriented businesses deprives them of a protected property interest in their liquor license without due process of law. We disagree. A person holding a liquor license indeed has a vested property right in that license. See *Bundo v Walled Lake*, 395 Mich 679, 691-692; 238 NW2d 154 (1976). However, plaintiffs have not been

deprived of that license, but rather from serving liquor under certain circumstances, and they do not have a due process right to the continuation of an existing law. See *Van Buren Township v Garter Belt, Inc*, 258 Mich App 594, 632-633; 673 NW2d 111 (2003). Plaintiffs have not been deprived of a property right to their liquor license without due process of law.

Finally, plaintiffs argue that the trial court erred when it concluded that defendant's zoning ordinance leaves open adequate alternative channels of adult expression. "An ordinance that does not suppress protected forms of sexual expression, but which is designed to combat the undesirable secondary effects of businesses that purvey in such activity, is to be reviewed under the standards applicable to content-neutral time, place, and manner regulations." *Truckor v Erie Twp*, 283 Mich App 154, 163; 771 NW2d 1 (2009). Among other requirements, such regulations cannot unreasonably limit alternative avenues of communication by functionally precluding a reasonable opportunity to operate a business of this nature. *Id*. at 163-166. That opportunity need not occur in the most desirable location, nor is there any particular minimal geographic requirement. *Id*. at 164, 166. Furthermore, the whims of the real estate market are of no concern. *Renton v Playtime Theatres, Inc*, 475 US 41, 54; 106 S Ct 925; 89 L Ed 2d 29 (1986). "In considering this issue, courts look to the number of lots or buildings available in the district for these establishments, the physical size of the municipality and acreage available for these businesses, the ratio of these establishments per population in the municipality, and the market demand for opening such enterprises." *Truckor*, 283 Mich App at 164.

Initially, however, the trial court relied heavily on an affidavit prepared by Michelle Katopodes, a city planner employed by defendant. Plaintiffs contend that the trial court should not have considered this affidavit for several reasons. First, plaintiffs argue that Katopodes was not qualified to render expert opinion testimony under MRE 702. It appears to us that Katopodes merely provided a compilation of data in her affidavit, not opinion testimony, and thus was acting as a fact witness rather than an expert witness. *Klabunde v Stanley*, 384 Mich 276, 282; 181 NW2d 918 (1970). Nonetheless, Katopodes has a master's degree in urban planning, which she obtained in 2005. She worked as an urban planner for New York City's Transportation Department. She has a professional certificate in "Geographic Information Systems" (GIS) from Michigan State University's Department of Geography. She has also been employed as a city planner by defendant since January 2015. Based on these credentials, Katopodes clearly has the educational background and experience to render an opinion under MRE 702 regarding what sites satisfy the zoning ordinance at issue in this case.

Plaintiffs also contend that Katopodes's affidavit cannot be relied upon because she relied on an earlier report created by Ken Bouchard with no knowledge of how Bouchard created that report, and because she failed to personally visit each site she listed. We disagree. Katopodes's affidavit makes clear that she referred to Bouchard's report, but she also prepared her own analysis, relying on GIS data and parcel attribute data from defendant's assessing department. Plaintiffs cite *Young v Nationwide Mut Ins Co*, 693 F3d 532, 540 (CA 6, 2012), a case involving the administrative feasibility of a proposed class-action certification, for the principle that "manual review" is required. That case did not involve zoning or land use issues of the kind present in this matter, and in any event it merely described how manual review would occur in that matter; it did not mandate it and certainly made no broad statements regarding what was required of expert opinion testimony generally.

Plaintiffs finally contend that Katopodes's affidavit should have been stricken because they were not presented with the information until the date defendant filed its motion for summary disposition, causing plaintiffs surprise and depriving them of adequate time to obtain their own expert. However, plaintiffs concede that they received Katopodes's list of sites at her deposition almost two months previously, and defendant had disclosed more than 50 such sites in a supplemental discovery response several months before that. In any event, the trial court permitted plaintiffs to file a supplemental brief after the hearing on the motion for summary disposition. Plaintiffs filed a supplemental brief, to which they attached their own expert report regarding the availability of sites that would satisfy the zoning ordinance. We are not persuaded that plaintiffs were surprised or unable to make an adequate response. We decline to consider plaintiffs' remaining arguments that they raise for the first time on appeal. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993).

Therefore, we conclude that the trial court properly relied on Katopodes's affidavit. The affidavit establishes that there are numerous alternative sites available for adult businesses to operate within Warren. Katopodes identified 51 whole parcels, totaling approximately 75 acres, available for use as an adult business under the ordinance. She identified another 59 parcels that could be divided in order to satisfy the geographic limitations imposed by defendant's zoning ordinance. Katopodes explained that splitting these lots would, in the vast majority of cases, be a ministerial task. Katopodes also explained that at present, no adult businesses operate in Warren, and that only plaintiffs appear interested in operating an adult business in the city. Plaintiffs have presented no evidence contradicting Katopodes on this point. Given that there is only one entity seeking to operate an adult business in Warren, and there exist over 100 whole or partial parcels where an adult business could be located, the zoning ordinance clearly does not deny plaintiffs a reasonable opportunity to operate a sexually oriented business in Warren.

Plaintiffs contend that Katopodes's report fails to consider whether any of those sites are actually suitable, including reasonable accessibility to the public, access to proper infrastructure, suitability for some generic commercial enterprise, and so on. Plaintiffs correctly note that the Ninth District analyzed the United States Supreme Court's decision in *Renton* and concluded that because it was always possible to define physically unsuitable land in economic viability terms, there had to be some way of evaluating whether a given parcel of real estate was even part of the market at all. *Topanga Press, Inc v Los Angeles*, 989 F2d 1524, 1529-1531 (CA 9, 1993). This case is not binding on us. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). In any event, plaintiff's reading of *Topanga Press* gets bogged down in the details: the Ninth Circuit did not mandate that all sites feature a list of characteristics, but, as noted, merely that there must be some characteristic establishing that it is part of the market. Even if we were to adopt *Topanga Press* as persuasive, Katopodes's affidavit unambiguously states that "many of [the] parcels currently house commercial establishments," and Topanga Press also held that commercially zoned sites are part of the market. *Topanga Press*, 989 F2d at 1531. We find Katopodes's report sufficiently establishes the suitability of the proposed sites.

Affirmed.

/s/ Stephen L. Borrello
/s/ William B. Murphy
/s/ Amy Ronayne Krause

-5-