*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OUTFRONT MEDIA, LLC,

        Appellant,

v

CITY OF GRAND RAPIDS,

        Appellee.

UNPUBLISHED
August 11, 2022

No. 357319
Kent Circuit Court
LC No. 20-005280-AA

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Appellant Outfront Media, LLC (Outfront) appeals by right the circuit court's order affirming the decision of the Board of Zoning Appeals (the BZA) of appellee the City of Grand Rapids (the City) The BZA had upheld the City's denial of Outfront's applications for permits to convert existing non-electronic billboards into electronic billboards. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In January 2020, Outfront submitted 10 sign-permit applications to the City's planning department. The applications related to 10 locations in the City, in four different zoning districts. On each application, under the description of the work to be performed, Outfront stated: "Re-facing of existing billboard." Specifically, Outfront planned to replace existing, static billboards with electronic billboards. Undisputedly, all the existing billboards in question are approved nonconforming billboards under the Grand Rapids Zoning Ordinance. Outfront's permit applications were denied by the City on the basis that "digital billboards are not permitted."

Following the denial of its applications, Outfront sought review by the BZA. Outfront filed two applications in the BZA: (1) an application for code interpretation and (2) an application to appeal the denial of its sign-permit applications. Outfront asked the BZA to interpret the applicable ordinances and to determine that Outfront was entitled to replace the existing billboards with electronic billboards. Outfront argued that the City's Zoning Ordinance, specifically Article 15, did not prohibit electronic billboards but allowed electronic billboards as a form of sign that uses LED bulbs as an electronic "changeable copy sign." Alternatively, Outfront also argued that it was entitled to "reface" its legally nonconforming signs and that the proposed upgrades were

permissible under the City's "Billboard Exchange Program." Finally, Outfront asserted that the City could not impose a content-based restriction on speech by treating on-premises signs differently than off-premises signs (i.e., billboards).

In response, the City's Planning Director asserted before the BZA that the permit applications were properly denied for four reasons:

> 1. Electronic signs are not permitted in the zone districts where the 9 out of 10 proposed locations are situated.

> 2. Where an electronic sign is allowed, billboards are not considered an eligible sign type that can integrate an electronic sign as a component of the overall sign.

> 3. Changes to non-conforming signs and sign structure are prohibited (excluding maintenance and repair).

> 4. A variance at one of the locations [on Logan Street] specifically prohibits electronic or tri-vision signs.

Addressing Outfront's more specific arguments, the City's Planning Director also maintained that Outfront's proposed conversion of static signs to electronic billboards did not constitute "refacing," that the proposed changes to electronic signs were impermissible because the effect would be to make the signs more nonconforming, and that the Billboard Exchange Program did not apply.

The BZA considered Outfront's permit applications at a public meeting in June 2020. Consistent with the reasons offered by the City's Planning Director, the BZA unanimously denied Outfront's request to interpret the ordinance to allow the conversion of the billboards to electronic billboards and denied Outfront's appeal of the City's denial of the sign permits.

Following the BZA's decision, Outfront appealed to the circuit court, arguing that the BZA's decision was not authorized by law because the BZA had misinterpreted the City's Zoning Ordinances and treated off-premises signs differently than on-premises signs. Outfront also asserted that the BZA's findings were not supported by substantial evidence. The circuit court affirmed the BZA's decision. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a circuit court's decision in an appeal from a BZA ruling. *Hughes v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009).

> This Court reviews the circuit court's determination regarding [BZA] findings to determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [BZA]'s factual findings. This standard regarding the substantial evidence test is the same as the familiar clearly erroneous standard. A finding is clearly erroneous if the

reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made. [*Id.* (quotation marks and citations omitted).]

Deference should be accorded to any factual findings by the BZA. *Id.* However, we review de novo constitutional questions, *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013), and issues involving the interpretation and application of ordinances. *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 136; 892 NW2d 33 (2016).

[T]he goal of construction and interpretation of an ordinance is to discern and give effect to the intent of the legislative body. The most reliable evidence of that intent is the language of the ordinance itself, which must be given its plain and ordinary meaning. When the words used in a statute or an ordinance are clear and unambiguous, they express the intent of the legislative body and must be enforced as written. [*Id.* at 137 (quotation marks and citations omitted).]

## III. INTERPRETATION OF THE ZONING ORDINANCE

Outfront argues that the circuit court erred by affirming the BZA's decision because the BZA made an error of law by misinterpreting the City's Zoning Ordinance to preclude the electronic upgrades to Outfront's billboards. Additionally, given that Outfront's existing billboards are legally nonconforming, Outfront argues that it may convert them to electronic billboards as (1) part of its maintenance of these existing billboards or (2) as an upgrade under the Billboard Exchange Program. We disagree.

Article 15, in Chapter 61 of Title V, of the Grand Rapids Code governs "signs" in the City. Article 15 is intended in part to promote "safe, well-maintained, vibrant and attractive residential and business neighborhoods while accommodating the need for signs to function for the purposes for which they are intended." Grand Rapids Code, § 5.15.01(A)(1). The Article also purports to recognize and balance "the individual user's right to convey a message" and "the public's right to be free of signs which unreasonably compete with one another, distract drivers and pedestrians, and create safety concerns and confusion." Grand Rapids Code, § 5.15.01(A)(2). To this end, Article 15 is intended to "[e]nsure that signs are located, designed, constructed, installed and maintained in a way that protects life, health, property and the public welfare," including addressing concerns related to safe traffic conditions and the aesthetic quality of neighborhoods, while also protecting free speech. See Grand Rapids Code, § 5.15.01(B)(2)-(5). Although the regulations in Article 15 "allow for a variety of sign types and sizes, they do not necessarily ensure every property owner or business owner's desired level of visibility." Grand Rapids Code, § 5.15.01(A)(7).

Article 15 makes it "unlawful for any person to erect, construct, install, place, locate, re-build, modify or maintain a sign or allow a sign to remain on property in the City except in compliance with this Article." Grand Rapids Code, § 5.15.02(a). Notably, Article 15 is set forth in a "permissive format," meaning that it states the types of signs permitted and necessarily implies the exclusion of any sign not listed. See *Independence Twp v Skibowski*, 136 Mich App 178, 184; 355 NW2d 903 (1984) (explaining the use of a "permissive format" in the zoning context). Further, § 5.15.06(A) expressly states: "Any sign that is not specifically permitted by this Article

is prohibited." See also Grand Rapids Code, § 5.15.02(B)(3) (listing among the intended effects of Article 15 to "[p]rohibit all signs not expressly permitted by this Article").

In broad terms, Article 15 identifies, and defines, numerous types of signs. See Grand Rapids Code, § 5.15.17. It also provides rules for those signs, in terms of size, placement, illumination, materials, etc. See, e.g., Grand Rapids Code, § 5.15.05 and § 5.15.06. In some cases, these rules differ depending on the zoning district in question. See, e.g., Grand Rapids Code, § 5.15.11 to § 5.15.13. Relevant to this case, Article 15 also provides rules for nonconforming signs, i.e., signs that were legally erected before the effective date of Article 15, but which do not conform to current sign regulations. See Grand Rapids Code, § 5.15.03. These rules for nonconforming signs involve provisions for maintenance and repair, prohibitions on expanding a nonconforming use, and a Billboard Exchange Program that allows for certain upgrades in exchange for the elimination of other nonconforming signs. See Grand Rapids Code, § 5.15.03.

Before addressing the rules for specific signs and zoning districts, we begin with some general definitions as set forth in Article 15. First of all, Article 15 defines a "sign" as:
> Any name, number, symbol, identification, description, display, illustration, object, graphic, sign structure, or part thereof, whether permanent or temporary, which is affixed to, painted on, represented directly or indirectly upon, or projected onto a building, structure, lot, or other device, whether mobile or affixed to the ground, and which directs attention to any object, product, place, activity, person, institution, organization, or business. [Grand Rapids Code, § 5.15.17(S).]

The term "sign" is clearly a general or generic term. In this respect, the rules of construction for the City's Zoning Ordinance, set forth in Article 16, specify that "[t]he particular shall control the general," and "the use of a general or similar term shall not be taken to be the same as the use of any other specific term." Grand Rapids Code, § 5.16.01(B)(2).

Article 15 also contains definitions—and rules—for numerous specific types of signs. Among the sign types specifically identified and defined are, for example, ground, wall, pylon, and window signs. See Grand Rapids Code, § 5.15.17. Additionally, and most pertinent to this case, a "billboard" is defined by reference to the term "off-premises sign." Grand Rapids Code, § 5.15.17(B). In turn, an "off-premises sign" is defined as: "A sign that may include a commercial message relating to an establishment, organization, product, service, event, entertainment, or activity which is not located, sold, offered, produced, manufactured or furnished on the property (lot) on which the sign is located. Synonymous with BILLBOARD." Grand Rapids Code, § 5.15.17(O). Additionally, a "changeable copy sign" is "[a] sign or portion thereof with characters, letters, or illustrations that can be manually or electronically changed or rearranged without physically altering the face of the surface of the sign. See also ELECTRONIC SIGN." Grand Rapids Code, § 5.15.17(C). An electronic sign includes "[e]lectronic message boards and changeable message centers, multi-media or computer-controlled variable message signs, and similar devices." Grand Rapids Code, § 5.15.17(E).

## A. ELECTRONIC BILLBOARDS UNDER ARTICLE 15

The initial question before this Court is whether Article 15 generally permits electronic billboards in the zoning districts in question. To answer this question it is important at the outset

-4-

to recognize the basic fact that Outfront sought permits for electronic signs. Outfront acknowledged this fact before the BZA, specifically stating: "Outfront's position is that the applications that is has submitted is for *electronic signs* on its existing billboard structures." For this reason, the BZA properly looked to the provisions for electronic signs when interpreting Article 15 and determining whether Outfront's permits should be granted.

The general rules for changeable-copy and electronic signs are set forth in Grand Rapids Code, § 5.15.10. However, the rules for signs in certain zoning districts—i.e., residential, mixed-use, and special and overlay districts—also contain provisions specific to those districts with regard to the permissibility of electronic signs. See Grand Rapids Code, § 5.15.11 to § 5.15.13. Changeable copy signs—be they manual or electronic—must comply with § 5.15.10 and the signs must "comply with the maximum area and site location requirements of the applicable Zone District." Grand Rapids Code, § 5.15.10(A). Applying these rules in this case, it is clear that electronic signs are not permitted in the relevant districts where the 10 sign locations are found.

First of all, four of the properties—those located on Monroe, Logan,[1] Front, and Century—are located in either the TN-TCC or the TN-CC districts. Regarding the permissibility of electronic signs in these districts, Grand Rapids Code, § 5.15.10(3)(d) expressly and unequivocally states: "Electronic signs are not permitted in the TN-CC, TN-TCC, and TN-TOD Zone Districts." This language could not be more clear. Electronic signs are not allowed in these districts.[2]

Five of the billboard locations—those located on Oak Industrial, Alpine,[3] Century, and Ball—are in the SD-IT district. Specific requirements for signs in special and overlay districts, which include the SD-IT district, are set forth in § 5.15.13 and the accompanying table, 5.15.13.A. Relevant to the SD-IT district, this table expressly states that electronic signs are "Not Permitted"

---

[1] With regard to the Logan property in particular, the BZA also specifically concluded that the billboard could not be upgraded to an electronic billboard because the billboard was erected under a variance "with the stipulation that the billboard include no tri-vision or digital screen features." Outfront has never challenged the existence of this condition on the Logan Street property or explained on what basis this condition can be ignored. Indeed, on appeal, Outfront does not address this portion of the BZA's decision. When an appellant fails to address one of the bases for a ruling, we need not even consider granting relief on appeal. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Regarding the Logan Street property in particular, this provides an additional basis for affirming the circuit court's decision.

[2] There is a narrow exception in the TN-CC district that does not apply to Outfront's billboards. Specifically, in the TN-CC district, "buildings with a seating capacity of 400 persons or more in 1 or more central locations within the building, and having a minimum GFA [gross floor area] of 25,000 sq. ft.," are permitted to have a "multi-media" sign pursuant to a special land use permit. See Table 5.15.12.B. A multi-media sign is defined as "[a] sign with alternating messages accomplished by electronic projection or similar means. See CHANGEABLE COPY SIGN and ELECTRONIC SIGN." § 5.15.17(M).

[3] There are two applications related to Alpine Ave.

in the SD-IT district. Again, the language could not be more clear. Electronic signs are not permitted in the SD-IT district.

Outfront's tenth, and final, application relates to a location on Stocking Ave, which is in the TN-TBA district. Under § 5.15.10(3)(b), electronic signs are permitted as of right in the TN-TBA district. However, as noted, all changeable copy signs, including electronic signs, must also comply with "the maximum area and site location requirements of the applicable Zone District." Grand Rapids Code, § 5.15.10(A). The TN-TBA district is considered a mixed-use commercial zone district, and the specific sign requirements for this district are set forth in § 5.15.12 and the accompanying table, 5.15.12.B. For mixed-use commercial zone districts, including the TN-TBA district, this table makes clear that, subject to certain requirements, only particular types of signs are allowed to be electronic, specifically ground, wall, pylon, or window signs. Billboards are not among the sign types which are permitted to be electronic. The parties agree that the billboard in question does not qualify as a ground, wall, pylon, or window sign.[4] Consequently, electronic billboards are not allowed in the TN-TBA district.

The clear language of Article 15 supports the conclusions of the City, the ZBA, and the circuit court. Notwithstanding this language, Outfront attempts to blur different sign types and to cherry-pick among the requirements for various signs. That is, Outfront asserts that a billboard is defined by its location as an "off-premises" sign and that a billboard, or off-premises sign, can also be "electronic" in the same way that, for example, a wall sign or a ground sign can also be an electronic sign. Yet, incongruously, Outfront seems to take the position that billboards can be electronic but that the restrictions on "electronic" signs should not apply to electronic billboards. According to Outfront, the rules for electronic signs can simply be ignored when a billboard is at issue because (1) billboards are allowed in certain circumstances; (2) signs can use LED bulbs as stated in § 5.15.5(E); and (3) changeable copy signs, including electronic signs, are permitted under § 5.15.10. Cobbling these disparate provisions together, and glossing over the actual language in each subsection, Outfront asserts: "the express language of the Ordinance allows billboards with faces comprised of LED bulbs that change copy electronically, which is precisely what an [electronic billboard] is." We reject Outfront's proposed interpretation as strained and imprecise.

To the extent Outfront asserts that the proposed sign conversion is permitted as a conversion to a changeable copy sign, as noted, when interpreting Grand Rapids zoning ordinances, the specific governs the general, § 5.16.01(B)(2); and while changeable copy signs are permitted—these changeable copy signs can be either manual *or electronic*. When electronic signs—as a more specific subset of changeable copy signs—are at issue, the specific rules for electronic signs must also apply. As discussed, electronic signs are not allowed at 9 of the 10 locations; and only specific signs—wall, pylon, window, and ground signs—can be electronic

---

[4] Additionally, as noted by the BZA, even if the billboards qualified as pylon, wall, window, or ground signs, there are size restrictions in the TN-TBA district on the percentage of the sign that can be electronic, and Outfront's proposal to make its signs 100% electronic would not meet these criteria. See § 5.15.10(C)(1).

in the TN-TBA district. There is no merit to Outfront's assertion that it may convert its signs to *electronic* changeable copy signs without being subject to applicable restrictions on electronic signs. Similarly, even assuming that an electronic billboard is ever permissible under Article 15[5] as an electronic sign, such an electronic billboard would need to satisfy the rules for electronic signs as well as the rules for billboards, in the same way that the rules for electronic signs also apply to electronic wall signs and electronic ground signs. Contrary to its assertions, Outfront is not entitled to simply pick and choose rules in Article 15 with which to comply. In seeking permits for electronic signs, Outfront must comply with the requirements and restrictions on electronic signs.

Further, to the extent that Outfront relies on the LED lighting provision in § 5.15.4(E), this reliance is wholly misplaced. Section 5.15.4 sets forth general provisions for signs, including general rules for things like sign placement, height and ground clearance, sign materials, and maintenance. Among these other general provisions is § 5.15.4(E), which relates to sign illumination and which includes rules related to LED lighting. In relevant part, this provision states:

> E. *Illumination*. Where permitted, the illumination of signs is strongly encouraged to help add a sense of liveliness and activity to the area. The following provisions shall apply to illuminated signs that are permitted elsewhere in this Article.

> \* \* \*

> 3. *Light Sources*. Signs shall be illuminated only by steady, stationary, shielded light sources using approved electrical devices. Exposed bulbs are prohibited except where neon or LED bulbs are used as signs, historic light fixtures are used for face-lit signs, or for marquee signs used for public theatres. [Grand Rapids Code, § 5.15.4(E).]

Reading § 5.15.4(E)(3) in isolation, Outfront relies on this provision to assert that Outfront may use LED bulbs in its billboards to make them electronic signs and, in particular, electronic changeable-copy billboards. However, when read in context, § 5.15.4(E)(3) simply provides that *if* LED bulbs are used, as permitted elsewhere in Article 15, they may be exposed bulbs. The provision says nothing about where or under what circumstances LED bulbs may be "used as signs." To the contrary, the section on illumination begins by stating: "*Where permitted*, the illumination of signs is strongly encouraged to help add a sense of liveliness and activity to the area. The following provisions shall apply to illuminated signs that are permitted *elsewhere in this*

---

[5] On appeal, the City takes the position that a billboard can never be an electronic sign under Article 15. In other words, the City asserts that electronic billboards are not permitted anywhere in Grand Rapids. It is not necessary to resolve this broad question, which would require examination of the requirements for electronic signs and billboards in all the numerous zoning districts in Grand Rapids. What is clear—and what is relevant to the issues before this Court in this case—is that electronic billboards are not permitted in the TN-CC, TN-TCC, SD-IT, and TN-TBA districts in which Outfront's billboards are located.

*Article*." Grand Rapids Code, § 5.15.4(E) (emphasis added). Indeed, an "illuminated sign" is a separately defined term under Article 15, see § 5.15.17(I), and the rules for specific zoning districts contain particular rules for illumination of signs in those districts. See, e.g., Grand Rapids Code, § 5.15.11 to § 5.15.13. Contrary to Outfront's reading, § 5.15.5(E)(3) does not broadly allow use of LED's as an electronic sign without regard to the rest of Article 15. Instead, to determine where and when electronic signs, including those involving the use of LED bulbs, are permissible, it is necessary to look to the provisions for electronic signs in § 5.15.10 and the zoning-district specific tables. As discussed, these sources do not allow electronic signs in the zones in question.

In sum, for nine of the billboard locations in question, all electronic signs are prohibited. For the tenth location, in the TN-TBA district, only certain sign types—wall, ground, pylon, and window—may potentially be electronic, and the billboard in question is not among the sign types that may be electronic. Consequently, the BZA did not misinterpret Article 15 or commit an error of law by concluding that electronic billboards were prohibited at the 10 locations at issue.

## B. UPGRADE OF NONCONFORMING BILLBOARDS

Outfront argues in the alternative that even if the current ordinance does not allow electronic billboards, it may upgrade its existing billboards to electronic billboards because the existing billboards are legally nonconforming. We disagree. In making this argument, Outfront relies on Grand Rapids Code, § 5.15.03, which sets forth (1) provisions related to maintenance of nonconforming signs, including refacing, and (2) the Billboard Exchange Program which allows upgrades to signs in certain circumstances in exchange for the elimination of other nonconforming signs.

Rules for nonconforming signs, including provisions for maintenance, structural alterations, and the provisions of the Billboard Exchange Program, are set forth in Grand Rapids Code, § 5.15.03. In relevant part, this section provides:

> A. *Applicability*. Every permanently affixed sign which was legally erected, constructed, installed, placed or located, and which lawfully existed on the effective date of this Chapter, but which does not conform to the type, height, size, area, or location requirements of this Article shall be deemed a nonconforming sign, provided that this status shall not be granted to any portable, banner, or other easily removable sign, including signs affixed to the interior or exterior of windows.
>
> B. *Expansion or Extension Prohibited*. Nonconforming signs shall not be expanded, enlarged, extended or structurally altered to create an additional nonconformity or to increase the extent of the existing nonconformity, except as permitted by the Billboard Exchange Program. A nonconforming sign may be lessened in size or dimension without jeopardizing its nonconforming status in accordance with Section 5.15.03.G.
>
> C. *Maintenance*. Nonconforming signs may be maintained and repaired so as to continue the useful life of the sign.
>
> 1. Maintenance and repair includes re-facing, painting of chipped or faded signs; replacement of faded or damaged surface panels; or repair or replacement of

electrical wiring or electrical devices.  A sign permit shall be submitted for sign re-facing, but is not required for normal repairs and maintenance.

2. Excluding maintenance and repair, changes to nonconforming signs shall be prohibited unless the signs are brought closer to conformance with this Chapter, meet the requirements of D., below, or are modified as permitted in Section 5.15.03.G.

* * *

I. *Billboard Exchange Program*.

1. *Purpose and Applicability*.

a.  The purpose of the Billboard Exchange Program is to reduce the overall number of nonconforming off-premises signs, facilitate redevelopment, and reduce visual clutter in residential and neighborhood commercial areas by providing incentives for the voluntary removal of nonconforming off-premises signs.  While it is recognized that off-premises signs serve a valuable purpose in the community by providing an advertising venue for local businesses and institutions, as well as a means to promote non-commercial speech, a proliferation of these signs may contribute to a sense of visual clutter and blight.  Off-premises signs can also deter the redevelopment of a parcel or limit the redevelopment potential of a site due to extended lease periods for nonconforming off-premises signs.

b.  Accordingly, it is in the best interest of the City to advance the economic welfare of the community by facilitating new investment and land development in accordance with the Master Plan and to remove any potential barriers that may hinder redevelopment opportunities within residential areas and neighborhood business districts.

c.  The regulations in this section identify certain high traffic volume corridors and locations within the City where the continuation of existing nonconforming off-premises signs is appropriate.  In exchange for the voluntary removal of nonconforming off-premises signs, various physical upgrades may be permitted to existing nonconforming off-premises signs and support structures in the designated Upgrade Eligibility Zone.

The Upgrade Eligibility Zone consists of existing off-premises signs and support structures in any zone district that are oriented so that motorists traveling on an interstate highway or expressway are the intended audience.  All off-premises signs and support structures included in the Upgrade Eligibility Zone are listed in the current Upgrade Eligibility Zone Table maintained and kept current by the Planning Department.  [Grand Rapids Code, § 5.15.03.]

Regarding the Billboard Exchange Program, § 5.15.03(I)(2) provides a system for obtaining "removal credits" and "bonus credits" by voluntarily removing nonconforming signs. These credits can then be used for upgrades to other nonconforming billboards as stated in

§ 5.15.03(I)(4) and an accompanying table, which details the upgrades that may be had under the program and the removal credits required to implement these upgrades. The table does not list electronic billboards as an available upgrade. Moreover, to participate in the Billboard Exchange Program, a billboard owner must submit an application for Director Review under Grand Rapids Code, § 5.15.03(I)(5).

## 1. BILLBOARD EXCHANGE PROGRAM

Given the provisions of the Billboard Exchange Program, it is clear that the program does not apply to the facts of this case. First of all, although Outfront mentioned the Billboard Exchange Program during the BZA proceedings, the applications at issue, as submitted by Outfront, were simply sign-permit applications, asserting on each application that it wanted to reface its existing billboards, which would implicate the sign-permit requirements for maintenance and repair under § 5.15.03(C)(1)[6] and the sign-permit application process under § 5.15.14. Outfront did not apply for Director Review under § 5.12.16 as stated in § 5.15.03(I)(5), as required for participation in the Billboard Exchange Program. And, given that there is no evidence of an application under the Billboard Exchange Program, the record is devoid of information about Outfront's available credits and whether Outfront has credits to expend on any "upgrades" to the billboards in question. In any event, no provision in the Billboard Exchange Program—as set forth in § 5.15.03(I) and the table identifying available upgrades—authorizes installation of an electronic billboard as a permissible upgrade to an existing, nonconforming billboard. Outfront's reliance on the Billboard Exchange Program is misplaced.

## 2. REFACING AS MAINTENANCE AND REPAIR

Outfront argues that it may install electronic billboards as a form of refacing its billboards as part of the maintenance and repairs on nonconforming signs permitted by § 5.15.03(C)(1). We disagree.

Generally speaking, "[a]n existing nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 341-342; 810 NW2d 621 (2011). A nonconforming use may involve "the physical characteristics, dimensions, or location of a structure, as well as the use of the premises." *Id*. at 342. In Michigan, "one of the goals of local zoning is the gradual elimination of nonconforming uses." *Id*. "The policy of the law is against the extension or enlargement of nonconforming uses, and zoning regulations should be strictly construed with respect to expansion." *Id*. For this reason, nonconforming uses generally may not be expanded, *id*., and "continuation of a nonconforming use must be substantially of the same size and the same essential nature as the use existing at the time of passage of a valid zoning ordinance." *Id*.

Consistent with these general principles, § 5.15.03 prohibits structural alterations and changes to nonconforming signs, unless those changes (1) are allowed by the Billboard Exchange Program or (2) the changes will bring the signs in "closer conformance" to the zoning rules. Apart

---

[6] "A sign permit shall be submitted for sign re-facing . . . ." Grand Rapids Code, § 5.15.03(C)(1).

from these two circumstances, § 5.15.03(B) only allows "maintenance and repair" "so as to continue the useful life of the sign." More fully, the relevant provisions state:

> B. *Expansion or Extension Prohibited.* Nonconforming signs shall not be expanded, enlarged, extended or structurally altered to create an additional nonconformity or to increase the extent of the existing nonconformity, except as permitted by the Billboard Exchange Program. A nonconforming sign may be lessened in size or dimension without jeopardizing its nonconforming status in accordance with Section 5.15.03.G.
>
> C. *Maintenance.* Nonconforming signs may be maintained and repaired so as to continue the useful life of the sign.
>
> 1. Maintenance and repair includes re-facing, painting of chipped or faded signs; replacement of faded or damaged surface panels; or repair or replacement of electrical wiring or electrical devices. A sign permit shall be submitted for sign re-facing, but is not required for normal repairs and maintenance.
>
> 2. Excluding maintenance and repair, changes to nonconforming signs shall be prohibited unless the signs are brought closer to conformance with this Chapter, meet the requirements of D., below, or are modified as permitted in Section 5.15.03.G. [Grand Rapids Code, § 5.15.03.]

The dispute in this case centers on the meaning of "re-facing" in § 5.15.03(C)(1) and whether Outfront's proposed upgrades to electronic signs amount to permissible maintenance and repair under this provision. Article 15 contains a specific definition of the term "re-facing," defining it as: "Any alteration to the face of a sign involving the replacement of materials or pans. Re-facing does not refer to replacing the entire sign structure or the removal of the sign." Grand Rapids Code, § 5.15.17(R). This definition of "re-facing" refers to three additional terms: "sign," "face" of a sign, and "sign structure." As noted, Article 15 defines a "sign" as:

> Any name, number, symbol, identification, description, display, illustration, object, graphic, *sign structure, or part thereof*, whether permanent or temporary, which is affixed to, painted on, represented directly or indirectly upon, or projected onto a building, structure, lot, or other device, whether mobile or affixed to the ground, and which directs attention to any object, product, place, activity, person, institution, organization, or business. [Grand Rapids Code, § 5.15.17(S) (emphasis added).]

A "sign structure" is defined as: "A structure specifically intended for supporting or containing a sign; including but not limited to supports, uprights, bracing, lighting, and framework." Grand Rapids Code, § 5.15.17(S). Article 15 defines the "sign surface/sign face" as "[t]he surface intended for the display of information on the sign." Grand Rapids Code, § 5.15.17(S).

Reading these definitions together, refacing merely allows alteration, involving the replacement of materials or pans, to the "surface intended for the display of information." It does *not* allow for replacement of the entire sign structure or removal of the sign. Yet, as detailed by the BZA and the Planning Director, the scope of Outfront's permit request was not limited to

-11-

altering the *surface* of the billboard, but involved altering the structure of the sign itself by permanently removing the wood paneling beneath the surface and installing LED paneling. Outfront proposed to "fully remove the current fixed sign face and existing wood paneling that supports the sign and replace the sign face with LED modular panels to form an electronic changeable copy sign face and structures that are specifically intended for supporting or containing the sign." Images submitted by Outfront to the BZA depict the components comprising traditional wooden signs as compared to an electronic billboard, illustrating the structural alterations to the signs involved with removing the existing paneling and installing new electronic panels. On this record, there is substantial evidence supporting the BZA's conclusion that the proposed structural alterations did not amount to mere refacing of the sign surface as permitted in the maintenance of an existing sign under Grand Rapids Code, § 5.15.03(C)(1).

Outfront's proposed structural alterations—which will create an additional nonconformity—are precluded by § 5.15.03(B). Indeed, to determine the work that may be performed on a nonconforming sign, § 5.15.03(B) should be read together with § 5.15.03(C)(1), and when they are read in harmony, they further support that Outfront's proposed changes are not permitted as a form of maintenance and repair. That is, § 5.15.03(B) precludes structural alterations "to create an additional nonconformity," unless permitted by the Billboard Exchange Program, which, as discussed, does not apply. In comparison, maintenance and repairs, including refacing, are limited to things that will "*continue* the useful life of the sign." (Emphasis added.) Taken together, these provisions make clear that any structural alteration performed as part of maintenance and repair is limited to *continuing* the status quo, while structural alterations that will create an additional nonconformity are prohibited. These provisions are consistent with general prohibitions against expanding nonconforming uses. See *Edw C Levy Co*, 293 Mich App at 341-342. In short, Outfront cannot, under the guise of maintenance and repair, structurally alter its billboards to create an additional nonconformity.[7]

There is substantial evidence supporting the BZA's conclusion that the structural alteration of the billboards to install electronic paneling will create an additional nonconformity because, as discussed, electronic billboards are prohibited in the zoning districts in question. Nonconforming uses can involve "the physical characteristics, dimensions, or location of a structure, as well as the use of the premises." *Id*. at 342. Being electronic is a physical characteristic that is specifically prohibited for billboards in the districts in question. Consequently, this structural alteration to make the billboards electronic will create an additional nonconformance that is precluded by § 5.15.03(B). For all these reasons, the BZA did not commit an error of law by concluding that

---

[7] Under § 5.15.03(C)(2), "[e]xcluding maintenance and repair, changes to nonconforming signs shall be prohibited unless the signs are brought closer to conformance . . . ." Given the BZA's conclusion that the alterations are not refacing that constitutes maintenance, this provision would also prohibit the changes because the alterations certainly will not bring the signs *closer* to conformance.

Outfront was not entitled to upgrade its existing nonconforming billboards to electronic billboards.[8]

## IV. CONSTITUTIONAL CLAIM

Outfront also argues that the BZA committed an error of law by precluding electronic billboards because this interpretation of Article 15 results in a distinction between on-premises and off-premises signs. According to Outfront, this distinction between on-premises and off-premises signs constitutes an impermissible content-based restriction on speech that is also arbitrary and capricious. We disagree.

"All ordinances are presumed to be constitutional and are construed to be so unless their unconstitutionality is clearly apparent." *Truckor v Erie Twp*, 283 Mich App 154, 161-162; 771 NW2d 1 (2009). "The party challenging the ordinance has the burden of rebutting the presumption that the ordinance is constitutional." *Id*. Both the United States and Michigan Constitutions protect freedom of speech. *In re Contempt of Dudzinski*, 257 Mich App 96, 100; 667 NW2d 68 (2003). "Speech or expression that is restricted because of the content of the message it conveys is subject to the most exacting scrutiny." *Id*. at 100-101. "In order to restrict speech on the basis of its content, the state must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id*. at 101. In comparison, "[c]ontent-neutral time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *Truckor*, 283 Mich App at 163 (quotation marks and citation omitted).

In this case, Outfront appears to raise a First Amendment challenge to the denial of its permit applications, but Outfront does not provide any meaningful analysis of intermediate or strict scrutiny review related to Article 15. Instead, Outfront simply makes the general assertion that regulations treating off-premises signs differently than on-premises signs violate the First Amendment because such regulations have the effect of discriminating on the basis of content.[9] In support of this assertion, Outfront cites federal circuit court decisions that have concluded that certain off-premises versus on-premises sign restrictions constituted content-based regulations. See *Reagan Nat'l Advertising of Austin, Inc v Austin*, 972 F3d 696, 707 (CA 5, 2020), rev'd by 142 S Ct 1464 (2022); *Thomas v Bright*, 937 F3d 721, 729 (CA 6, 2019), rev'd by 142 S Ct 1464 (2022). Recently, however, the United States Supreme Court overruled these decisions, concluding that a restriction involving a location-based distinction was not content-based merely because it would require reading a sign to determine whether the sign was located on-premises or off-premises. See *Austin, Texas v Reagan Nat'l Advertising of Austin, LLC*, ___ US ___; 142 S Ct

---

[8] Given our conclusion that the BZA properly applied Article 15 in denying Outfront's permits, we find it unnecessary to address Outfront arguments related to whether it properly completed 10 applications while seeking to upgrade 19 billboards at 10 locations. Regardless whether there were 10 or 19 signs at issue, the BZA did not commit an error of law by denying the permit applications.

[9] Even if this assertion were correct, strict-scrutiny review would apply, and yet, Outfront fails to engage in strict-scrutiny analysis of the challenged regulations.

1464, 1472-1476; ___ L Ed 2d ___ (2022). In short, Outfront's reliance on *Bright* and the federal circuit court's decision in *Reagan* is misplaced, and a location-based distinction between off-premises signs and on-premises signs does not amount to a content-based restriction. See *id*. Indeed, long before the United States Supreme Court decided the issue, this Court had already rejected the argument that "accessory (or on-site) and nonaccessory (off-site) matters are content based." *Outdoor Sys, Inc v Clawson*, 262 Mich App 716, 722; 686 NW2d 815 (2004).

As applied in this case, there is no content-based restriction in the City's sign ordinances, and accordingly, intermediate review for time, place, and manner restrictions applies. See *Truckor*, 283 Mich App at 163. In this respect, with regard to electronic signs, Article 15 simply provides time, place, and manner restrictions by limiting where in the City electronic signs can be located and imposing restrictions on the types of signs that may be electronic as well as hours when electronic signs may operate. Indeed, to some extent, Outfront's concern for off-premises versus on-premises signs is misleading. because the actual rules in Article 15 concerning electronic signs do not focus on the off-premises or on-premises nature of the signs but on the location of electronic signs in the City (restricting their use to certain zoning districts) and specific types of signs (for example, use of wall, pylon, window, and ground signs). In other words, there is no broad rule that all on-premises electronic signs are permissible. It is true that the ordinances preclude electronic billboards (i.e., off-premises signs), even in those districts where certain on-premises sign types can be electronic. However, given the size requirements applicable to the signs that may be electronic, it is clear that billboards cannot satisfy these requirements. Simply stated, billboards are considerably larger than those sign types that can be electronic in certain zoning districts in the City. This size distinction provides a sound reason for the distinction drawn in Article 15 in terms of what sign types can be electronic.

Further, the City has legitimate aesthetic interests, including interests in the reduction of visual clutter, to justify rules limiting existing nonconforming billboards to static signs, rather than allowing them to become electronic billboards, and otherwise limiting electronic signs to certain sign types, subject to various size and location requirements. See *Adams Outdoor Advertising, Inc v Holland*, 234 Mich App 681, 693; 600 NW2d 339 (1999) (concluding that a city's aesthetic interests were sufficient to justify billboard regulations), aff'd 463 Mich 675 (2001); *Gannett Outdoor Co of Mich v Troy*, 156 Mich App 126, 133-136; 409 NW2d 719 (1986) (same). Given these interests, Outfront has not sustained its burden of overcoming the presumed constitutionality of Article 15. See *Adams Outdoor*, 234 Mich App at 693. Outfront's cursory First Amendment argument is without merit.

Relatedly, citing *Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 63-64; 678 NW2d 444 (2003), Outfront contends that the BZA's decision is arbitrary and capricious because the City has created a distinction between on-premises and off-premises signs. A decision is considered arbitrary if it was "[w]ithout adequate determining principle," "[f]ixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance," "decisive but unreasoned." *Id*. at 63 (quotation marks and citation omitted). In this context, capricious means "[a]pt to change suddenly; freakish; whimsical; humorsome." *Id*. at 64 (quotation marks and citation omitted).

In making its arbitrary-and-capricious argument, Outfront's claim is something of a moving target. Outfront contends that a distinction between on-premises and off-premises signs

would be unprincipled and, indeed unconstitutional, but Outfront also seems to take the position that, as written, the ordinance does not actually contain such a distinction. Instead, according to Outfront, the City has arbitrarily interpreted or arbitrarily applied the ordinance to create such a distinction. To support its argument, Outfront presents this Court with pictures of electronic signs in Grand Rapids, and Outfront contends that some of these electronic signs are in the TN-CC district, where the City has concluded—and where Article 15 expressly states—that electronic signs are not allowed.

To the extent Outfront contends that any distinction between on-premises and off-premises signs is unprincipled or unconstitutional, as discussed, the distinction is not content-based and Outfront has not overcome the presumption that Article 15's regulation of electronic signs is constitutional. Further, there is nothing arbitrary or whimsical in regulating the use of electronic signs in Grand Rapids on the basis of location and sign characteristics, including size. See *Kirk v Tyrone Twp*, 398 Mich 429, 439; 247 NW2d 848 (1976) (noting ordinances are presumed valid and "the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable"). To the contrary, as discussed, the City has legitimate interests in the aesthetics of the community. See *Adams Outdoor*, 234 Mich App at 693; *Gannett Outdoor*, 156 Mich App at 133-136. In short, Outfront has identified nothing that is arbitrary, capricious, or unreasonable in the City's prohibition on electronic billboards in the zoning districts in question and in the denial of Outfront's permits for impermissible electronic billboards. Further, as already discussed, and contrary to Outfront's argument, electronic billboards are in fact prohibited under Article 15 in the zoning districts in question.

In actuality, although Outfront does not label it as such, it appears that, substantively, Outfront is attempting to advance some sort of selective enforcement argument or to assert that the City applied the zoning ordinance in a discriminatory manner. That is, Outfront really seems to contend that the City has acted arbitrarily by denying Outfront's permit requests while allowing other electronic signs in, for example, the TN-CC district, where such signs are not permitted. To prevail on such an argument, Outfront would need to show that it was treated differently than similarly situated sign-permit applicants. See *Risko v Grand Haven Charter Twp Zoning Bd of Appeals*, 284 Mich App 453, 465; 773 NW2d 730 (2009). Outfront has not done so.

Although Outfront provided the BZA and the circuit court with several pictures of what Outfront describes as electronic signs in Grand Rapids, Outfront failed to create a sufficient factual record regarding the signs' precise locations and physical characteristics, the applicable zoning districts for the signs in question, and the circumstances relevant to the application of Article 15 to these signs. For example, it is unclear when the signs were erected, whether permits were issued for the signs, under what circumstances permits were issued, or whether variances were granted for the signs in question, etc. There is, in short, no indication whether the BZA approved the signs or under what circumstances. As the appellant, it is Outfront's burden to provide this Court with a record to verify the factual basis of any argument upon which a claim for relief is predicated. See *Petraszewsky v Keeth (On Remand)*, 201 Mich App 535, 540; 506 NW2d 890 (1993). Yet, Outfront has failed to develop an adequate factual record to support its assertion regarding a disparate application of Article 15. Moreover, looking at the pictures provided by Outfront, it is clear that none of the signs in question are in the same size category—large billboards—as Outfront's proposed electronic signs. Quite simply, Outfront has not identified any similarly situated sign-permit applicants who were allowed to have electronic signs in the zones in

question.[10]  Consequently, Outfront has failed to show that it has been treated differently from other similarly situated permit applicants.  See *Risko*, 284 Mich App at 465.  In sum, Outfront's constitutional arguments lack merit.

Overall, the BZA did not commit an error of law and its findings of fact were supported by substantial evidence.  Consequently, the circuit court did not err by affirming the BZA.[11]

Affirmed.

/s/ Michelle M. Rick
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien

---

[10] Additionally, to the extent Outfront's argument relates specifically to the TN-CC district, there is a narrow exception in this district to the prohibition on electronic signs for "buildings with a seating capacity of 400 persons or more in 1 or more central locations within the building, and having a minimum GFA of 25,000 sq. ft."  See Table 5.15.12.B.  Outfront fails to address this exception or its application to any of the signs in the photos Outfront submitted, making it unclear whether this exception applies to Outfront's examples of signs in the city center and further supporting that Outfront has not identified similarly-situated permit applicants treated differently than Outfront.

[11] On appeal, Outfront also argues that the trial court erred by issuing its decision before the time for Outfront to file a reply brief had expired.  See MCR 7.111(A)(3).  According to Outfront, had it been allowed to file a reply brief, it would have alerted the trial court to an incomplete statement of law in the City's brief related to the deference, or lack thereof, owed the City's interpretation of its own ordinances.  See generally *Kalinoff v Columbus Twp*, 214 Mich App 7, 11; 542 NW2d 276 (1995).  However, absent evidence to the contrary, a trial judge is presumed to know the law, *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015), and we see no indication that the circuit court applied any incorrect legal principles in this case.  In any event, given our conclusion that the BZA properly interpreted and applied the unambiguous language Article 15 as written, it is clear that the degree of deference owed to a City in the interpretation of an ordinance would not affect the outcome of the proceedings.  In these circumstances, a reply brief by Outfront to address the deference owed the City's interpretation would not affect the outcome, and any error in the circuit court issuing its opinion before Outfront had a chance to reply was harmless.  See *Lawrence v Mich Unemployment Ins Agency*, 320 Mich App 422, 443-444; 906 NW2d 482 (2017).

-16-